UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

| Proceedings: | **(IN CHAMBERS:) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT** (filed 05/02/08) |
|---|---|
| | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,604,537** (filed 05/06/08) |
| | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF ASSERTED CLAIMS OF U.S. PATENT NO. 6,266,904** (filed 05/06/08) |

## I.     INTRODUCTION

Plaintiff Patent Category Corp. ("plaintiff" or "PCC") owns the rights to U.S. Patent No. 6,266,904 ("the '904 patent") issued on July 31, 2001, and U.S. Patent No. 6,604,537 ("the '537 patent"), issued on August 12, 2003.  On November 15, 2006, plaintiff filed the instant suit against defendants Target Corp. ("Target") and Franklin Sports, Inc. ("Franklin") alleging that defendants are infringing plaintiff's patents.[1]  Defendant Franklin is a distributor of at least fifteen models of collapsible, spring-form soccer goals ("Pop-Up Goals"), which plaintiff alleges infringe its patents.[1]  Franklin

---

[1] At the hearing held herein, the parties provided the Court with two examples of the accused products.  Exhibit 1, the Dora the Explorer Pop-Up Goal, is accused of infringing the '537 patent only.  Exhibit 2 is accused of infringing both the '537 patent and the '904 patent.  The Court will refer to these exhibits in deciding the issue of infringement, or non-infringement as the case may be.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|----------|----------------------|------|---------------|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

purchased these accused products from The Ninja Corp. UAE ("Ninja").[2] Id. Defendant Target Corp. ("Target") sells Pop-Up Goals to consumers pursuant to an agreement with Franklin.

On May 2, 2008, plaintiff filed the present motion seeking summary judgment of infringement with regard to the '537 and '904 patents. Defendants filed their opposition on May 19, 2008. On May 27, 2008, plaintiff filed its reply to defendants' opposition. On May 6, 2008, defendants filed a motion for summary judgment seeking a determination that the '904 patent is invalid, and also a motion for summary judgment of non-infringement as to the '537 patent. On May 19, 2008, plaintiff filed oppositions to defendants' motions for summary judgment. On May 22, 2008, defendants filed their replies to plaintiff's oppositions. A hearing was held on the parties' motions on June 2, 2008. At the pretrial conference held on July 7, 2008, the Court gave its ruling on the instant motions. Plaintiff requested leave to file supplemental briefing in response thereto. The Court granted this request. Plaintiff filed its supplemental brief on July 8, 2008. Defendants filed their opposition to plaintiff's supplemental brief on July 10, 2008. After carefully considering the parties' arguments the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    THE '537 PATENT

The application for the '537 patent, entitled "Collapsible Structures," was filed on March 8, 2001. Declaration of Lori V. Minassian in Supp. of Pl.'s Motion for Summary Judgment ("MSJ") ("Minassian Decl."), Ex. 1 ('537 patent) at 000003. The application for the '537 patent states that Yu Zheng is the inventor, and that PCC is the assignee of the '537 patent. Id. On August 12, 2003, the United States Patent and Trademark Office

---

[2] On March 9, 2007, Ninja, a corporation organized under the laws of the United Arab Emirates, filed suit against plaintiff in the United States District Court for the Southern District of Texas, seeking a declaration that its products do not infringe the '904 and '537 patents, and that these patents are invalid. The action was then transferred to the United States District Court for the Central District of California in September 2007, and assigned to this Court as a case related to the present action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

(the "PTO") issued the '537 patent.  <u>Id.</u>

The '537 discloses a collapsible structure, which may be provided in various shapes and sizes.  It has a deployed configuration, and a smaller collapsed configuration. The section of the '537 patent entitled "Background of the Invention" sets forth the background of the types of collapsible structures that have been used by adults and children for such purposes as dollhouses, action figure play houses, as well as tents, cabanas, and other similar outdoor structures used for camping.  <u>Id.</u> at 000016.

In the section headed "Summary of the Disclosure," the '537 patent states:

The present invention provides a collapsible structure which is convenient to use, to transport, and to store, and which offers a wide variety of uses to the user.

In order to accomplish the objects of the present invention, the collapsible structures according to the present invention are provided with first and second wall panels each wall panel having a foldable frame member having a folded and unfolded orientation, a frame retaining sleeve for retaining the respective frame member, and a fabric material substantially covering each frame member to form the panel for each frame member when the frame member is in the unfolded orientation.  The fabric assumes the unfolded orientation of its associated frame member.  The foldable frame member of each wall panel further includes a top side and a bottom side, with the frame retaining sleeve of the wall panel stitched along the length of its top side of the second wall panel to form a hinged connection.

<u>Id.</u>

## B.    THE '904 PATENT

The application for the '904 patent, entitled "Collapsible Structures Supported on a Pole," was filed on February 1, 1999.  Minassian Decl., Ex. 2 ('904 patent) at 000022. The application for the '904 patent also states that Yu Zheng is the inventor, and that PCC is the assignee of the '904 patent.  <u>Id.</u>  On July 31, 2001, the PTO issued the '904 patent.  <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

The '904 patent discloses a collapsible object supported by a pole, which pole is attached to a foldable frame with fabric material covering portions of the foldable frame to form a panel. The background section of the '904 patent sets forth a description of the prior art:

> Collapsible objects have recently become very popular. These objects have one or more panels which may be twisted and folded to reduce the overall size of the structures to facilitate convenient storage and use . . . . One such application is for use as collapsible shelters or play structures . . . . Another such application is for use as collapsible sunshields . . . . Yet another application is for use as collapsible flying structures.

Id. at 000033.

In the section headed, "Detailed Description of the Preferred Embodiments," the '904 patent states:

> The present invention provides collapsible objects that can be supported by a pole. The principles of the present invention can be applied to provide more convenient use and possible new uses for certain objects that are supported on poles, including but not limited to flags, games, umbrellas and exhibit media.

Id.

## III.   LEGAL STANDARD

### A.   SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## B.    INFRINGEMENT

The patentee bears the burden of establishing infringement by the accused product by a preponderance of the evidence. Kegel Co. v. AMF Bowling, Inc., 127 F.3d 1420, 1425 (Fed. Cir. 1997). Patent infringement requires that an accused product have all the same elements, or substantial equivalents thereof, present in the claim of the patent. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997). If even one element, or limitation, is not present, the accused product does not literally infringe as a matter of law. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1581 (Fed. Cir. 1996). If an accused product does not literally infringe, it may still infringe a claim under the doctrine of equivalents if an element of the product is the substantial equivalent of the otherwise missing claim limitation. Sage Products, Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1423 (Fed. Cir. 1997) (holding that a claim element is "equivalently present in an accused device if only insubstantial differences distinguish the missing claim element

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

from the corresponding aspects of the accused device"). The doctrine of equivalents is limited by the countervailing doctrine of prosecution history estoppel, which precludes a patent holder from reviving subject matter that was surrendered in the proceedings before the Patent Examiner, even if equivalent to the subject matter expressly claimed. Warner-Jenkinson Co., 520 U.S. at 30.

A two-step analysis is performed to determine whether a patent has been infringed. CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co., KG, 224 F.3d 1308 (Fed. Cir. 2000). "First, the claims must be correctly construed to determine the scope of the claims. Second, the claims must be compared to the accused device" to determine if the limitations are met. Kahn v. Gen. Motors, Corp., 135 F.3d 1472, 1476 (Fed. Cir. 1998). Generally, the terms of the claim are given their ordinary meaning, unless it appears that the inventor used them differently. Vitronics, 90 F.3d at 1582. A court should interpret the language of the claims in light of the claim language itself, the specification, the relevant prior art, and the prosecution history from the perspective of a person of ordinary skill in the relevant art. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). While claim construction is solely a matter of law for the court, id., a determination of infringement, both literal and under the doctrine of equivalents, is a question of fact. Insituform Technologies v. Cat Contracting, Inc., 161 F.3d 688, 692 (Fed. Cir. 1998).

## C.   INVALIDITY

Pursuant to 35 U.S.C. § 282, all patents are presumed valid, and the burden of establishing invalidity, by reason of lack of novelty (anticipation) or obviousness, rests upon the party asserting invalidity.[3]  The statute presumes each claim of a patent to be valid independently of the validity of the other claims. Id.  "Because dependent claims

---

[3] 35 U.S.C. § 282 states in pertinent part:

A patent shall be presumed valid. Each claim of a patent (whether in independent or dependent form) shall be presumed valid independently of the validity of other claims; dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

contain additional limitations, they cannot be presumed to be invalid as obvious just because the independent claims from which they depend have properly been so found." Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1356 (Fed. Cir. 2001). The presumption of patent validity may be rebutted only by a showing of "clear and convincing evidence." Saf-Gard Products, Inc. v. Service Parts, Inc., 532 F.2d 1266, 1271 (9th Cir. 1976).

**IV.   DISCUSSION**

**A.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '537 PATENT**

Plaintiff asserts that the Franklin brand Pop-Up Goals infringe claims 1 through 4 of the '537 patent. Claim 1 is an independent claim, and claims 2 through 4 are dependent claims, which depend from claim 1.

**1.   CLAIM CONSTRUCTION**

In order to determine whether there is infringement the Court must first construe the claims at issue.

Claim interpretation begins with an examination of the intrinsic evidence of record, which includes the patent claims,[4] the specification,[5] and, if in evidence, the prosecution

---

[4] The first source courts turn to in order to define the scope of the invention is "the words of the claims themselves, both asserted and nonasserted." Vitronics, 90 F.3d at 1582. In fact, often, "the most important indicator of meaning" of a disputed claim term "is its usage and context, within the claim itself." Middleton v. 3M, 311 F.3d 1384, 1387 (Fed. Cir. 2002). Additionally, claim language cannot be interpreted differently in different claims because claim terms must be interpreted consistently. Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1579 (Fed. Cir. 1995).

[5] "When the claim language itself lacks sufficient clarity to ascertain the scope of the claims," the court should turn to the specification. Deering v. Vector Distrib. Sys.,

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

history[6] and prior art.[7]  Vitronics, 90 F.3d at 1582, 1584; Phillips v. AWH Corp., 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc); V-Fromation, Inc. v. Benetton Group

---

[5](...continued)
347 F.3d 1314 (Fed. Cir. 2003).  The specification "contains a written description of the invention that must enable one of ordinary skill in the art to make and use the invention. It is the primary source for claim construction.  Phillips v. AWH Corp., 415 F.3d 1303, 1320-21 (Fed. Cir. 2005) (en banc); see also Vitronics, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."); Renishaw PLC v. Marposs Societa Per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim . . . . The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").  However, "[a]lthough claims must be read in light of the specification of which they are a part, . . . it is improper to read limitations from the written description into a claim."  Tate Access Floors, Inc. v. Maxcess Technologies, Inc. 222 F.3d 958, 966 (Fed. Cir. 2000); see also Kraft Foods, Inc. v. Int'l Trading Co., 203 F.3d 1362, 1366 (Fed. Cir. 2000) ("Although the written description may aid in the proper construction of a claim term, limitations, examples, or embodiments appearing only there may not be read into the claim.").

[6] The prosecution history "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims [and] is often of critical significance in determining the meaning of the claims."  Vitronics, 90 F.3d at 1583. In particular, the prosecution history "limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."  Southwall, 54 F.3d at 1576.

[7] In construing asserted claims, courts may consider "prior art proffered by one of the parties, whether or not cited in the specification or the file history, . . . to demonstrate how a disputed term is used by those skilled in the art."  Vitronics, 90 F.3d at 1584; see also In re Cortright, 165 F.3d 1353, 1358 ("Prior art references may be 'indicative of what all those skilled in the art generally believe a certain claim term means.'") (quoting Vitronics, 90 F.3d at 1584).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

SAP et al., 401 F.3d 1307, 1310 (Fed. Cir. 2005). Courts also may use extrinsic evidence, for example expert or inventor testimony, to resolve ambiguities in the disputed claim terms, but only if the intrinsic evidence does not resolve the ambiguities.[8] Vitronics, 90 F.3d at 1583-84; Phillips, 415 F.3d at 1317-18. Further, technically extrinsic evidence, such dictionaries, encyclopedias, and technical treatises may be consulted at any time to help determine the meaning of claim terms.[9] Vitronics, 90 F.3d at 1584 n.6; Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1203 (Fed. Cir. 2002); Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp., 309 F.3d 1365, 1378 (Fed. Cir. 2002). All such evidence – both intrinsic and extrinsic – should be viewed from the perspective of a person of ordinary skill in the relevant art. Markman v. Westview Instruments Inc., 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc).[10]

---

[8] "The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." Phillips, 415 F.3d at 1324.

[9] However, in Phillips, the Federal Circuit cautioned that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." Phillips, 415 F.3d at 1321 (holding that a court should not start with a dictionary to determine the plain meaning of a term, and only then turn to the specification in order to determine whether to narrow that meaning in light of the intrinsic evidence).

[10]     By examining relevant dictionaries, encyclopedias and treatises to ascertain possible meanings that would have been attributed to the words of the claims by those skilled in the art, and by further utilizing the intrinsic record to select from those possible meanings the one or ones most consistent with the use of the words by the inventor, the full breadth of the limitations intended by the inventor will be more accurately determined and the improper importation of unintended limitations from the written description into the claims will be more easily avoided.

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Generally, courts begin with a "heavy presumption" that "the terms in the claim are to be given their ordinary and accustomed meaning."  Johnson Worldwide Assoc., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999); see also Gart v. Logitech, Inc., 254 F.3d 1334, 1341 (Fed. Cir. 2001).  This ordinary and customary meaning is the meaning a claim term "would have to a person of ordinary skill in the art at the time of the invention."  Innova/Pure Water, Inc. v. Safari Water Filtration Sys., 381 F.3d 1111, 1116 (Fed. Cir. 2004).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

"An accused infringer may overcome this 'heavy presumption' and narrow a claim term's ordinary meaning, but he cannot do so simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history."  CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed. Cir. 2002) (quoting Johnson Worldwide, 175 F.3d at 989).  Rather, "a court may constrict the meaning of a claim term in at least one of four ways."  Id.  First, the claim term will not be given its ordinary meaning "if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term."  Johnson Worldwide, 175 F.3d at 990; see also Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1204 (Fed. Cir. 2002) ("Indeed, the intrinsic record may show that the specification uses the words in a manner clearly inconsistent with the ordinary meaning reflected, for example, in a dictionary definition. In such a case, the inconsistent dictionary definition must be rejected.").  Second, a claim term will not have its ordinary meaning "if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention."  CCS Fitness, 288 F.3d at 1366-67; see e.g., Spectrum Int'l, Inc. v. Sterilite Corp., 164 F.3d 1372, 1378 (Fed. Cir. 1998); SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc., 242 F.3d 1337, 1343-44 (Fed. Cir. 2001); Toro Co. v. White Consol. Indus., Inc., 199 F.3d 1295, 1301 (Fed. Cir. 1999).  Third, a claim term will not receive its ordinary meaning "if the term 'chosen by the patentee so deprive[s] the claim of clarity' as to require resort to the other intrinsic

---

[10](...continued)
Texas Digital Systems, 308 F.3d at 1205.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

evidence for a definite meaning." CCS Fitness, 288 F.3d at 1367 (quoting Johnson Worldwide, 175 F.3d at 990). Fourth, if a claim is phrased in step-or mean-plus-function format, a claim term does not cover more than the corresponding structure or step disclosed in the specification, and the equivalents thereto. 35 U.S.C. § 112 ¶ 6; CCS Fitness, 28 F.3d at 1367.

Thus, although courts may look to intrinsic and extrinsic evidence, courts "perform this consultation" to determine whether any of the reasons for abandoning the ordinary meaning are applicable. Gart v. Logitech, Inc., 254 F.3d 1334, 1341 (Fed. Cir. 2001). In the absence of one or more of the circumstances set forth above, courts must follow the general rule that claim terms are to be given their ordinary meaning. Id.; Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp., 309 F.3d 1365, 1370-73 (Fed. Cir. 2002) (holding that nothing in the patent's claim language, specification, or prosecution history contradicted or altered the plain meaning of the unambiguous claim term "mobility" and thus it was error for the district court to construe the claim term at issue not in accordance with its plain meaning).

### a. CLAIM 1

Claim 1 reads as follows:

A collapsible structure having a deployed configuration and a collapsed configuration, comprising:

a side member and a base member, each member including a portion of a foldable frame member that has a folded and an unfolded orientation, and a fabric material covering at least a portion of its frame member when the frame member is in the unfolded orientation; and

the side member having a bottom side, and the base member having a first side, with the side member and the base member connected to each other adjacent the bottom side of the side member and the first side of the base member; and

a first frame retaining sleeve for retaining the portion of the frame member for the side member, and a second frame retaining sleeve for retaining the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

portion of the frame member for the base member, with the first frame retaining sleeve stitched along the bottom side of the side member to the second frame retaining sleeve along the first side of the base member to form a hinged connection.

Minassian Decl., Ex. 1 ('537 patent) at 000020-21.

Plaintiff contends that the term "collapsible" should be construed to mean the "ability to be folded or reduced in size," and the word "collapse" to mean "'to fold compactly.'" Pl.'s MSJ at 7 (quoting The American Heritage Dictionary of the English Language 261 (1981)). Plaintiff asserts that the phrase "frame member" means "a frame." Id. Plaintiff further contends that claim 1 contemplates that the structure has a side portion, and a bottom portion. Finally, plaintiff states that the term "sleeve" should be construed to mean "'any encasement or shell into which a piece of equipment fits.'" Id. at 8 (quoting The American Heritage Dictionary of the English Language 1215 (1981)). According to plaintiff, claim 1 also requires one frame retaining sleeve to be stitched to another frame retaining sleeve to form a hinged connection. See Pl.'s Opp'n to Defs.' MSJ of Non-Infringement at 5 ("According to defendants, 'the first frame-retaining sleeve must be stitched to the second frame retaining sleeve to form a hinged connection.' (Def. Br. 9.) So far, PCC agrees."). Plaintiff asserts that this hinged connection can be formed by utilizing any of the seven preferred embodiments set forth in the specification. Thus, according to plaintiff, the hinged connection can be formed by either stitching one frame retaining sleeve directly to another frame retaining sleeve as shown in Figure 3A of the '537 patent, or by stitching one frame retaining sleeve to an intermediate piece of fabric, which intermediate piece of fabric is in turn stitched to a second frame retaining sleeve, as shown in Figures 3B-3D.

Defendants take issue with plaintiff's interpretation of the phrase "stitched along the bottom side to." Minassian Decl., Ex. 1 ('537 patent) at 000021. First, defendants argue that claim 1 must be construed to require two separate frame retaining sleeves that are stitched to one another to form a hinged connection. Specifically, defendants argue that the following language must be construed to require at least two separate frame retaining sleeves: "a first retaining sleeve for retaining the portion of the frame member for the side member, and a second frame retaining sleeve for retaining the portion of the frame member for the base member." Id. According to defendants, the use of the words "first" and "second," must be construed to require two separate frame retaining sleeves.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Next, defendants turn to the requirement that "the first frame retaining sleeve [be] stitched along the bottom side of the side member to the second frame retaining sleeve along the first side of the base member to form a hinged connection." Id. According to defendants, this limitation requires the first retaining sleeve to be stitched directly to the second retaining sleeve to form a hinged connection. Defendants assert that the dictionary definition of the word "stitch" is variously defined as a "'single complete in-and-out movement of a threaded needle in sewing, embroidering, or suturing,'" a "'single complete in-and-out movement of the threaded needle in sewing,'" "'a single loop of yarn worked off a needle in knitting, crocheting, etc.,'" "'to fasten, join, or close with or as if with stitches,'" and "'one complete movement of a threaded needle through fabric of material such as leave behind it a single loop or portion of thread, as in sewing, embroidering, or the surgical closing of wounds.'" Defs.' Reply to Pl.'s Opp'n to Defs.' MSJ of Non-Infringement at 3 (quoting Webster's Third New International Dictionary (Unabridged) 2246 (2002); Webster's New World College Dictionary (3d 1997); Webster's Ninth New Collegiate Dictionary (1983)). Defendants contend that the phrase "stitched to" must therefore be construed to mean that "two pieces of material – in this case, the first retaining sleeve and the second retaining sleeve – are sewn directly to one another via a stitch." Id. at 9.

Defendants maintain that in each instance in which the '537 patent describes two items as being "stitched to" each other, the two items are connected by shared pieces of thread.[11] Defendants urge that their claim construction is supported by Figure 3A of the '537 patent. Defendants argue that because claim 1 requires that the first retaining sleeve be stitched to the second frame retaining sleeve, as disclosed in Figure 3A, claim 1 does not cover the embodiment shown in Figure 3B, which requires that an intermediate piece of fabric is used. See Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1106-07 (Fed. Cir. 1996) ("[S]ubject matter disclosed but not claimed in a patent application is dedicated to the public."). Specifically, the embodiment shown in Figure 3B of the '537 patent discloses a second preferred embodiment for "hingedly connecting" two edges of wall panels.

---

[11] Pointing to related United States Patent No. 6,155,281 (the "'281 patent") defendants argue that inventor Yu Zheng "know how to" "include broad claims covering all types of hinges," but that he failed to include such broad language in the '537 patent by requiring that a sleeve be "stitched to" another sleeve. Defs.' Reply to Pl.'s Opp'n to Defs.' MSJ of Non-Infringement at 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Minassian Decl., Ex. 1 ('537 patent) at 000007, 000017.  In this second preferred embodiment one frame retaining sleeve is stitched to one end of an interconnecting piece of fabric, and a second frame retaining sleeve is stitched to another end of the interconnecting piece of fabric, which interconnecting piece of fabric acts as an interconnecting hinge for the panels.  Id. at 000017.

Having addressed the parties' arguments, the Court now turns to the terms used in claim 1, and, as stated above, the Court begins with the "heavy presumption" that a claim term should be construed according to its ordinary and accustomed meaning as viewed by a person skilled in the art.[12]  Johnson Worldwide Assocs. v. Zebco Corp., 175 F.3d 985,

---

[12] In determining the ordinary and customary meaning of claim terms, the Court relies heavily on the intrinsic evidence.  First, the Court looks to the claim language.  See Dow Chem Co. v. Sumitomo Chem. Co., 341 F.3d 1370, 1372 (Fed. Cir. 2001); Vitronics Corp., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Second, the Court will turn to the specification, which, as stated above, is the "single best guide to the meaning of a disputed term."  Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).  In doing so the Court will, of course, take care to avoid "importing limitations [from the specification] into the claims."  Texas Digital, 308 F.3d at 1204.  Further, if provided, the Court will look to the prosecution history.

Additionally, dictionaries, a special form of extrinsic evidence, are particularly useful as well.  Tex Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1203 (Fed. Cir. 2002); Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp., 309 F.3d 1365, 1372 (Fed. Cir. 2002).  In Phillips, the Federal Circuit affirmed that courts may "consult dictionaries and technical treatises 'at any time to better understand claim terms.'"  Phillips, 415 F.3d at 1321 (quoting Vitronics Corp. v. Conceptronic, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996)).  However, Phillips cautioned that courts must take care to attach the appropriate weight to dictionary definitions.  Id. at 1324.  Thus, it is important to compare the general dictionary meanings of a claim term with the use of the claim term in the context of the patent.  Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1300 (Fed. Cir. 2003).  The intrinsic record should be consulted to ensure that the meaning (or meanings) chosen is the one "most consistent with the use of the words by the inventor."  Id.

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

989 (Fed. Cir. 1999). In this case, the claims do not appear to require any special interpretation. See Phillips v. AWH Corp., 415 F.3d 1303, 1313-17 (Fed. Cir. 2005) (en banc) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges."). In such cases, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314.

### i.    "COLLAPSIBLE"

Collapsible has a plain and ordinary meaning, and here, the patentee has used the term in a manner consistent with its ordinary meaning. As used in claim 1, the word "collapsible" refers to the ability to fold down. Specifically, in context, "collapsible" requires that an object be capable of folding down in order to reduce the size of the structure. Further, figures 5A-5E of the '537 patent depict an object being folded down upon itself to reduce its overall size. See Minassian Decl., Ex. 1 ('904 patent) at 000010-12. The dictionary definitions of collapsible comport with this construction.[13] See Phillips, 415 F.3d at 1314 (noting that where claim instruction does not require elaborate interpretation, "general purpose dictionaries may be helpful"). For example, the Oxford English Dictionary defines "collapsible" as "[c]apable of collapsing: made to collapse or fold together." The Oxford English Dictionary (the "OED") (2d ed. 1989). Similarly, the American Heritage Dictionary defines the word "collapse" as "to fold compactly." The American Heritage Dictionary of the English Language ("The American Heritage

---

[12](...continued)
"Because words often have multiple dictionary definitions, some having no relation to the claimed invention, the intrinsic record must always be consulted to identify which of the different possible dictionary meanings of the claim terms in issue is most consistent with the use of the words by the inventor." Tex Digital Sys., Inc., 308 F.3d at 1203 (Fed. Cir. 2002). And, "[i]f more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings." Id.; Inverness, 309 F.3d at 1378-79.

[13] See, e.g., Moba B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1315 (Fed. Cir. 2003) (relying on Oxford English Dictionary); Inverness, 309 F.3d at 1378 (citing with approval the use of The Shorter Oxford English Dictionary, Webster's Third International Dictionary, and Merriam Webster's Collegiate Dictionary).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Dictionary") (4th ed. 2000).

### ii.   "A SIDE MEMBER AND A BASE MEMBER"

Claim 1's requirement that the collapsible structure have a "side member" and a "base member" appears to require that the structure have at least two panels: a side portion, and a bottom portion. See Minassian Decl., Ex. 1 ('537 patent) at 000005, 000013-15.[14]

### iii.   "A BOTTOM SIDE" AND "A FIRST SIDE"

Claim 1 further recites: "the side member having a bottom side, and the base member having a first side, with the side member and the base member connected to each other adjacent the bottom side of the side member and the first side of the base member." Id. at 000021. "Bottom side" refers to the bottom edge of the side portion of the structure, while "first side" refers to an edge of the bottom portion of the structure. See id. at 000017 ("The base panel 22c has two opposing side edges 23a and 23c, each having opposing ends connected to one of two end edges 23b and 23d. The wall panel 22a has a left side edge 26a, a bottom side edge 26b, a right side edge 26c, and a top side edge 27 . . . . Referring to FIG. 1, the bottom side edge 27b of wall panel 22b is hingedly connected to side edge 23c of the base panel 22c, and the top side edge of 27d of wall panel 27a."). Claim 1 therefore requires that the side portion and the bottom portion of the collapsible structure be connected to one another near these edges. See The OED (2d ed. 1989) (defining "adjacent" as "[l]ying near or close (*to*); adjoining; contiguous; bordering," "[n]ot necessarily *touching*, though this is by no means precluded"); The American Heritage Dictionary (4th ed. 2000) (defining "adjacent" as "[c]lose to; lying near," "next to; adjoining").

### iv.   "FIRST FRAME RETAINING SLEEVE" AND
### "SECOND FRAME RETAINING SLEEVE"

---

[14] The Court notes that the fourth preferred embodiment of the collapsible structure illustrated in Figure 8 of the '537 patent depicts a structure with two side panels. Minassian Decl., Ex. 1 ('537 patent) at 000019. However, the "base panel has been omitted." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

A sleeve is commonly understood to be a structure that fits over and around another structure. This ordinary meaning comports with dictionary definitions of the term. According to the OED, a "sleeve" is a "close-fitting protective cover or case." The OED (2d ed. 1989). Similarly, the American Heritage Dictionary defines "sleeve" as "[a] case into which an object or device fits." The American Heritage Dictionary (4th ed. 2000).

The term "retaining," when considered in context, requires that the sleeve hold an object, which in this case is a frame. Figure 2 of the '537 patent discloses a frame resting in the center of a protective cover. Minassian Decl., Ex. 1 ('537 patent) at 000006. According to the OED, "retaining" means "[s]erving to retain or hold by physical force or resistence." The OED (2d ed. 1989). To "retain" means "[t]o maintain possession of," [t]o keep or hold in a particular place, condition, or position." The American Heritage Dictionary (4th ed. 2000).

Based on the foregoing, the Court finds that a "frame retaining sleeve" is a cover made up of a fabric material that encloses a structure that offers support or structure. See Minassian Decl., Ex. 1 ('537 patent) at 000017 (describing how to create a frame retaining sleeve with fabric material). Because claim 1 calls for a "first" and "second" "frame retaining sleeve," the Court concludes that claim 1 requires two such sleeves.

### v.     "STITCHED ALONG THE BOTTOM SIDE OF"

There does not appear to be significant disagreement about the construction of the aforementioned terms. Instead, the crux of the parties disagreement is with the following language of claim 1: "the first frame retaining sleeve stitched along the bottom side of the side member to the second frame retaining sleeve along the first side of the base member to form a hinged connection." Id. at 000021.

The Court finds that, contrary to defendants' interpretation, claim 1 does not require that two sleeves be directly stitched to one another. In fact, the words "directly to" or "touch" are never used. Instead, claim 1 states only that one frame retaining sleeve is to be "stitched along the bottom side" of another frame retaining sleeve. Id. As customarily understood, two objects do not need to be touching to run "along the bottom" of each other. The OED defines "along" as "[i]n a line with the length, parallel to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

longest dimension or course (of something understood); lengthwise, longitudinally." The OED (2d ed. 1989). Merriam-Webster's Collegiate Dictionary defines "along" as "in a line matching the length or direction of." Merriam-Webster's Collegiate Dictionary ("Webster's Collegiate") (10th ed. 1996). Further, the American Heritage Dictionary defines the word "along" as "over the length of" or "on a line or course parallel and close to; continuously beside: *rowed along the shore*; *trees along the shore*." The American Heritage Dictionary (4th ed. 2000) (emphasis in original). "Th[ese] definition[s] and the illustrative examples [they] provide[] reflect that an object can be 'along' another object even if the two do not come in contact. Rather, the two objects need only be 'parallel' and 'close to' each other." Lyndex Corp. v. Heartech Precision, Inc., 2004 U.S. Dist. LEXIS 24, at *10-11 (N.D. Ill. Jan. 5, 2004) (rejecting defendant's interpretation of claim language requiring a groove to "extend[] along the outer circumference of the base end of [a] chuck sleeve," as requiring the groove to touch the outer surface of the chuck sleeve).

Claim 1 further requires the two frame retaining sleeves to be connected to each other to form a "hinged connection." A stitch is generally understood to be a loop of thread or yarn formed by inserting a needle in and out of a some material. The American Heritage Dictionary defines "stitch" as "[a] single complete movement of a threaded needle in sewing or surgical suturing," "[a] single loop of yarn around an implement such as a knitting needle, "[t]he link, loop, or knot made in this way," "[a] mode of arranging the threads in sewing, knitting, or crocheting." The American Heritage Dictionary (4th ed. 2000). Webster's Collegiate and Webster's Third New International Dictionary state, in relevant part, that the word "to" is "used as a function word to indicate contact or proximity." Webster's Collegiate (10th ed. 1996); Webster's Third New Int'l Dictionary (3rd ed. 1993). Moreover, the specification defines the words "hinged connection" as meaning "permanently connecting or attaching two adjacent sides of adjacent panels in a manner in which the connection is not intended to be disconnected during normal use of the structure." Minassian Decl., Ex. 1 ('537 patent) at 000017. Thus, the purpose of "hingedly connect[ing]" the two sleeves through a stitch is to ensure that two adjacent panels will remain permanently connected to each other.

Under the circumstances, to read claim 1 in the manner urged by defendants would improperly limit the patent to just one preferred embodiment. Claim 1 does not disclaim or exclude a preferred embodiment in which two sleeves are permanently connected to each other via an intermediate piece of fabric material. The specification clearly sets forth alternative means of connecting two frame retaining sleeves, and in three of these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

embodiments the sleeves are connected to each other through the use of an intermediate piece of fabric.  See Sandisk Corp. v. Memorex Produs., 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment . . . is 'rarely, if ever, correct.'") (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 7576, 1583 (Fed. Cir. 1996)).

Generally, claims should not be construed to exclude preferred embodiments.  See e.g., SanDisk Corp. v. Memorex Products, Inc., 415 F.3d 1278, 1285 (Fed. Cir. 2005); NeoMagic v. Trident Microsystems, 287 F.3d 1062, 1074-75 (Fed. Cir. 2002); Helmsderfer v. Bobrick Washroom Equip., Inc., 2008 U.S. App. LEXIS 11818, at *9-10 (Fed. Cir. June 4, 2008) ("[O]ur court has cautioned against interpreting a claim term in a way that excludes disclosed embodiments, when that term has multiple ordinary meanings consistent with the intrinsic record.").  In Oatey Co. v. IPS Corp., 514 F.3d 1271 (Fed. Cir. 2008), the Federal Circuit stated

> We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification.  However, we have interpreted claims to exclude embodiments of the patented invention where those embodiments are clearly disclaimed in the specification, or prosecution history.

Id. at 1276-77.  Defendants correctly point out that the Federal Circuit has explained that "Oatey is not a panacea, requiring all claims to cover all embodiments."  PSN Ill., LLC v. Ivoclar Vivadent, Inc., 525 F.3d 1159, 1166 (Fed. Cir. 2008); see e.g., Sinorgchem Co. v. ITC, 511 F.3d 1132, 1138 (Fed. Cir. 2007) ("Where, as here, multiple embodiments are disclosed, we have previously interpreted claims to exclude embodiments where those embodiments are inconsistent with unambiguous language in the patent's specification or prosecution history."); Tip Sys., LLC v. Phillips & Brooks/Gladwin, Inc., 2008 U.S. App. LEXIS 12757, at *19 (Fed. Cir. June 18, 2008) ("However, to construe the claim term to encompass the alternative embodiment in this case would contradict the language of the claims.  Indeed, read in the context of the specification, the claims of the patent need not encompass all disclosed embodiments.").

Although a court is by no means required to construe a claim so that it includes all of the disclosed embodiments, in this case, the claim language can reasonably be interpreted to include the disputed embodiments; the language does not preclude a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

construction of two sleeves that are permanently connected to each other by way of an intermediate piece of fabric.  Accordingly, the Court concludes that claim 1 requires only that one frame retaining sleeve be stitched near the bottom of a second frame retaining sleeve in such a way that the two sleeves are permanently connected to each other.

### b.  CLAIMS 2 THROUGH 4

Claim 2 is dependent on claim 1.  Claim 2 recites as follows:

The structure of claim 1, wherein the side member and the base member are placed on top of each other when the structure is twisted and folded to its collapsed configuration.

Minassian Decl., Ex. 1 ('537 patent) at 000021.

Claim 3 also depends from claim 1.  Claim 3 states:

The structure of claim 1, further including means for interconnecting the bottom side of the side member and the first side of the base member.

Id.

Claim 4 depends from claim 1.  Claim 4 discloses the following:

The structure of claim 1, wherein the side member lies in a first uninterrupted plane and the base member lies in a second uninterrupted plane, with the first and second planes extending at different angles.

Id.

The parties do not appear to disagree about the construction of claims 2, 3, and 4.

### 2.  COMPARING THE CLAIMS TO THE ACCUSED PRODUCTS

As stated above, once the Court has construed the claims at issue, the claims must be compared to the accused products to determine if the claim limitations are met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Plaintiff argues that the accused products are collapsible structures, that twist and fold into a collapsed configuration, and that include both a collapsed configuration and a deployed configuration. Plaintiff argues that the accused products also have a side portion and a base portion. According to plaintiff, the accused products include a first frame retaining sleeve, and a second retaining sleeve for retaining frame members. Finally, plaintiff contends that the accused products also include a hinged connection formed by stitching two frame retaining sleeves to together.

According to defendants, unlike the collapsible structure disclosed in the '537 patent, which has two separate, foldable frame members, all of the accused products are formed using a "Figure 8" approach that was disclosed in U.S. Patent No. 4,825,892, which patent lists Lowell R. Norman as the inventor, and Pure Concept, Inc. as the assignee (the "Norman patent"). See Declaration of Pankti Patel in Support of Defs.' MSJ of Non-Infringement ("Patel Decl. in Support of Defs.' MSJ of Non-Infringement"), Ex. C ("Norman patent"). Defendants argue that unlike the collapsible structures described in the '537 patent, in which each panel of the structure has its own continuous foldable frame member, the accused products are formed from two discontinuous sections of a folder over, Figure 8 frame member.

Defendants further argue that because the accused products are not formed using distinct frame members for each panel, and because the structure of the accused devices requires a crossover of discontinuous sections, a hinged connection cannot be formed by stitching two frame retaining sleeves together. Instead, the hinge between the panels for the accused products, according to defendants, is formed by stitching portions of a single sleeve retaining the Figure 8 frame to an intermediate piece of fabric.

Defendants argue that the accused products do not literally infringe the '537 patent because the hinges in the accused products are formed by stitching two sleeves to an intermediate piece of fabric. Defendants further argue that the accused products do not infringe the '537 patent under the doctrine of equivalents. First, defendants argue that the doctrine of equivalents cannot be applied to vitiate a claim limitation, i.e., the limitation requiring two frame retaining sleeves to be stitched directly to one another. Next, defendants argue that the scope of equivalents cannot include what is disclosed in the prior art, and the prior art discloses the use of an intermediate piece of fabric to connect two pieces of fabric together. Defendants additionally argue that the doctrine of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

equivalents cannot be used to cover embodiments that were disclosed, but not claimed, in the patent application.

Finally, defendants argue that because the accused products do not satisfy all of the limitations of the claim 1, they do not satisfy the limitations of dependent claims 2 through 4 since these dependent claims incorporate all of the limitations of independent claim 1.

The Court previously stated that because the accused product is formed by folding a single frame into a Figure 8 shape, there can be no dispute that there is just one frame, and therefore, just one frame retaining sleeve. However, plaintiff correctly points out that in fact, there is a disputed question of fact as to whether the accused product has one or two frame retaining sleeves.[15] For this reason, the Court finds that summary judgment is inappropriate.

**B.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '904 PATENT**

**1.     INVALIDITY OF PATENT**

Defendants move for summary judgment on the affirmative defense that the asserted claims of the '904 patent are invalid by reason of anticipation or obviousness.

**a.     LACK OF NOVELTY (ANTICIPATION)**

Invalidity based on lack of novelty, or "anticipation," requires that all elements of a patent claim are identically set forth in a prior art reference. <u>Schering Corp. v. Geneva Pharms., Inc.</u>, 339 F.3d 1373, 1379 (Fed. Cir. 2003); <u>Finnigan Corp. v. U.S. Int'l Tade Comm'n</u>, 180 F.3d 1354, 1367 (Fed. Cir. 1999) ("A prior art reference anticipates a patent claim if the reference discloses, either expressly or inherently, all of the limitations

---

[15] Plaintiff raised this issue of fact in its memorandum filed on July 8, 2008, and although defendants object thereto, it appears that this issue should be decided by the trier of fact rather than on summary judgment as set forth in the Court's tentative minuted order dated July 7, 2008.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

of the claim."). In determining invalidity due to anticipation, the "first step involves the proper interpretation of the claims." Beachcombers, Int'l v. WideWood Creative Prods., Inc., 31 F.3d 1154, 1160 (Fed. Cir. 1994). As stated above, claim interpretation is a question of law. Markman v. Westview Instruments, Inc., 52 F.3d 967, 975 (Fed. Cir. 1995) (en banc). "The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art." Beachcombers, Int'l, 31 F.3d at 1160. Whether the prior art meets the claim limitations is a question of fact. Brown v. 3M, 265 F.3d 1349, 1351 (Fed. Cir. 2001), cert. denied, 122 S. Ct. 1436 (2002).

### i.   CLAIM CONSTRUCTION

Defendants argue that claims 4 and 6 are anticipated by U.S. Patent No. 6,611,380 ("the '380 patent'"), which patent discloses a collapsible sunshade awning structure.[16] See Miniassian Opp'n Decl., Ex. 2 (the '380 patent) at 18. In order to determine whether the prior art of the '380 patent anticipates claims 4 and 6 of the '904 patent, the Court will first construe the claim limitations at issue. In order to construe a claim term, the Court first looks to the ordinary meaning of that term. Tex. Digital Sys. v. Telegeniz, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002).

### 1.   CLAIM 4

Claim 4 is a dependent claim, which depends from claim 1. Claim 4 of the '904 patent recites: "[t]he object of claim 1, further including a frame retaining sleeve for retaining the frame member, the frame retaining sleeve attached to the material." Declaration of Lori V. Minassian in Supp. of Pl.'s Opp'n to Defs.' MSJ of Invalidity ("Minassian Opp'n Decl."), Ex. 1 ('904 patent) at 17.

The term "frame," as it used in the context of the '904 patent, is a structure that offers support for or to another structure. Figure 2 of the patent depicts a frame as a narrow, rectangular structure. Id. at 4. The specification explains that the

---

[16] Defendants also argue that claims 1, 2, 7, and 8 are invalid. However, because PCC represents that it does not dispute their invalidity, and is no longer asserting infringement of those claims, the Court declines to address claims 1, 2, 7, and 8 of the '904 patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

frame member 32 is preferably formed of flexible coilable steel, although
other materials such as plastics may also be used. The frame member 32
should be made up of a material which is relatively strong and yet is flexible
to a sufficient degree to allow it to be coiled.

Id. at 15. The OED defines the word "frame" as "[a] structure which serves as an
underlying support or skeleton." The OED (2d ed. 1989). A "frame," according to the
American Heritage Dictionary, is a "structure that gives shape or support." The
American Heritage Dictionary (4th ed. 2000).

A sleeve is commonly understood to be a structure that fits over and around
another structure. See E-Pass Technologies v. 3Com, 343 F.3d 1364, 1367 (Fed. Cir.
2003) ("In order to construe a disputed claim term, we first seek the ordinary meaning of
the claim term."). This ordinary meaning comports with dictionary definitions of the
term "sleeve." As stated supra, according to the OED, a "sleeve" is a "close-fitting
protective cover or case." The OED (2d ed. 1989). Similarly, the American Heritage
Dictionary defines "sleeve" as "[a] case into which an object or device fits." The
American Heritage Dictionary (4th ed. 2000). Figure 2 of the '904 patent supports this
interpretation, showing the sleeve to be a material that is wrapped around the frame,
thereby covering the frame. Minassian Opp'n Decl., Ex. 1 ('904 patent) at 4.

The word "retain" is commonly understood to mean "to hold." The specification
states, in pertinent part, that "[a] continuous frame member 32 is retained or *held* within
the frame retaining sleeve 32 to support the panel 22." Id. at 15 (emphasis added).
According to the OED, "retaining" means "[s]erving to retain or hold by physical force or
resistence." The OED (2d ed. 1989). To "retain" means "[t]o maintain possession of,"
[t]o keep or hold in a particular place, condition, or position." The American Heritage
Dictionary (4th ed. 2000).

The specification and accompanying illustrations support this understanding of the
phrase "frame retaining sleeve." Specifically, the specification for the '904 patent
explains that the continuous frame member may be enclosed within the sleeve, without
being attached thereto, or alternatively, the sleeve may be "mechanically fastened,
stitched, fused, or glued to the frame member to retain the frame member in position."
Minassian Opp'n Decl., Ex. 1 ('904 patent) at 15. Further, Figure 2 of the '904 patent
shows a rectangular prism that is covered by or enclosed in a sheet of fabric material. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

at 4.  The specification explains that the "continuous frame member 32 is retained or held within the frame retaining sleeve 30 to support the panel 22."[17]  Id. at 15.

Based on the foregoing, the Court finds that a "frame retaining sleeve" is a cover made up of a fabric material that encloses a structure that offers support or structure.

### 2.   CLAIM 6

Claim 6 depends from claim 5, which is in turn dependent on claim 1.  Claim 6 recites: "[t]he object of claim 5, wherein the attachment mechanism includes a sleeve connected to the panel for coupling the panel to the pole."  Id. at 17.

The word "attachment" is ordinarily understood to mean the act of, or a device or method for connecting two objects.  For example, the American Heritage Dictionary defines "attachment" as "[t]he act of attaching or the condition of being attached; . . . [s]omething, such as a tie, band, or fastener, that attaches one thing to another."  The American Heritage Dictionary (4th ed. 2000).  "Attach" in turn means "[t]o fasten, secure, or join."  Id.  Read in context of claim 6, it is clear that "attachment mechanism" refers to a device for connecting two objects.

The term "sleeve," means, as stated above, an outer cover for covering a structure that is contained inside that outer cover.

The term "coupling" is commonly understood to mean linking or joining.  According to the American Heritage Dictionary "coupling" is "[t]he act of linking together or forming couples," "or "a device that links or connects."  The American Heritage Dictionary (4th ed. 2000).

---

[17] The specification describes panel 22 as a collapsible object, such as a flag or a sign, which can take many forms, such as circular, oval, rectangular, or square.  Minassian Opp'n Decl., Ex. 1 ('904 patent) at 14-15.  The panel contains a continuous frame retaining sleeve that runs along each of its sides, inside which sleeve is kept a continuous frame member.  Id. at 15.  "Fabric or sheet material 34 extends across the panel 22 and is held taut by the frame member 32 when the panel 22 is in its open position."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Finally, a "pole" is typically, straight, slender, rounded or cylindrical object. <u>See generally</u>, Minassian Opp'n Decl., Ex. 1 ('904 patent); <u>see also</u> The OED (2d ed. 1989) (defining "pole" as "a long, straight, slender, and more or less cylindrical piece of wood or another material, used in scaffolding, as a support, or for various other purposes"); The American Heritage Dictionary (4th ed. 2000) (defining pole as a "long, relatively slender, and generally rounded piece of wood or other material").

The aforementioned constructions are supported by the '904 patent's specification. The '904 patent, unlike the '537 patent, requires a pole. This pole, in each of the illustrations, appears as a slender, cylindrical structure. <u>See</u> Minassian Opp'n Decl., Ex. 1 ('904 patent) at 1-7, 9-13. The specification states that the collapsible panel can be connected or attached to the pole by "any conventional attachment mechanism 25, including but not limited to strings, straps, rope, opposing Velcro™ pads, links and chains." <u>Id.</u> at 14. According to the specification, "[t]he conventional attachment mechanism 25 can be a sleeve 70 . . . that is formed by folding a piece of fabric . . . and then stitched (along stitch line 72) to an edge of the panel 22, with the pole 24 retained inside the sleeve 70." <u>Id.</u> Figure 1B illustrates how a sleeve can be used to connect the panel to the pole. <u>Id.</u> at 5. In Figure 1B, a sleeve, which is connected to the panel, is formed by folding a piece of fabric into a tubular shape, and then stitching the fabric together so that it maintains this tubular shape. <u>Id.</u> Then a pole is slipped into the space in the middle of the tube. <u>Id.</u> The pole is connected to the pole by using a tie, or pieces of slender, string like fabric pieces, to tie the sleeve (and its attached panel) to the pole. <u>Id.</u> Finally, the specification explains that the panel can "can be pivoted about its attachment mechanism(s) 25 (about an axis defined by the pole 24) so that wind or other forces will cause the panel 22 to pivot about the pole." <u>Id.</u> at 15.

Thus, claim 6 requires that a sleeve be connected to the edge of the panel for linking or joining the panel to the pole by slipping the pole inside of the sleeve.

### ii. ANTICIPATION BY THE PRIOR ART

Defendants argue that claims 4 and 6 of the '904 patent are anticipated by U.S. Patent No. 5,611,380 ("the '380 patent'").

"Anticipation under 35 U.S.C. § 102 means lack of novelty, and is a question of fact." <u>Brown v. 3M</u>, 265 F.3d 1349, 1351 (Fed. Cir. 2001), <u>cert. denied</u>, 122 S. Ct. 1436

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

(2002).  "However, without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law."  SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1343 (Fed. Cir. 2005).  "In order to prove that a claim is anticipated under 35 U.S.C. §102(b), defendants must present clear and convincing evidence that a single prior art reference discloses, either expressly or inherently, each limitation of the claim."  In re Cruciferous Sprout Litigation ("Cruciferous Sprout"), 301 F.3d 1342, 1349 (Fed. Cir. 2002) (citations omitted).

"Prior art" under Section 102(b) includes a printed publication in which the invention was described that was published more than one year prior to the date of the earliest filing date of the patents at issue.  35 U.S.C. §102(b).  What is disclosed in a prior art reference when analyzed for anticipation is a question of fact that the Federal Circuit reviews for clear error.  See, Tegal Corp. v. Tokyo Electron America, Inc., 257 F.3d 1331, 1345-46 (Fed. Cir. 2001), cert. denied, 122 S. Ct. 1297 (2002).

"A prior art reference may anticipate when the claim limitations not expressly found in that reference are nonetheless inherent in it."  Cruciferous Sprout, 301 F.3d at 1349.  "[I]f the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates."  Id. (citing MEHL/Biophile Int'l Corp. v. Milgraum, 192 F.3d 1362, 1365 (Fed. Cir. 1999)).

Claim 4 of the '904 patent recites: "[t]he object of claim 1, further including a frame retaining sleeve for retaining the frame member, the frame retaining sleeve attached to the material."  Minassian Opp'n Decl., Ex. 1 ('904 patent) at 17.  Defendants argue that the '380 patent anticipates the "frame retaining sleeve" by describing "a flexible fabric sheet 18 attached to a flexible frame 20."  Id., Ex. 2 ('380 patent) at 24.  Additionally, it appears that defendants contend that the '380 patent anticipates the "frame retaining sleeve" and the "attachment mechanism . . . for coupling the panel to the pole" by disclosing "loop 24a."  Id. at 19, 25.

The application for the '380 patent, entitled "Collapsible Sunshade Awning," was filed on November 30, 1995.  Minassian Opp'n Decl., Ex. 2 ('380 patent) at 18.  It lists Richard Landy as the inventor, and Auto-Shade, LLC as the assignee.  Id.  On March 18, 1997, the PTO issued the '380 patent.  Id.

The '380 patent discloses a collapsible awning structure that is designed to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

temporarily attached to another structure.  Id. at 24 ("An awning is disclosed which is removable and collapsible for easy storage and is also capable of being attached to many surfaces.").  The '380 patent requires, inter alia, "a flexible frame forming at least one collapsible closed lope" and "a flexible sheet disposed upon the frame to define a central region."  Id. at 27 (claim 1 of the '380 patent).  The specification states that the flexible frame is constructed by taking a "spring-like metal or plastic material that can be readily twisted and folded without breaking," and bending it to form a closed loop, which loop is ultimately joined together.  Id.  The "flexible fabric sheet," which is "disposed upon the frame," may be constructed from a thin sheet of woven material that is flexible and strong, such as "thin plastic" or "reinforced paper."  Id. at 24.  The "flexible frame [is] covered with [the] . . . flexible material and is supported by a structure."  Id.  The collapsible awning is attached to surfaces such as buildings and windows through the use of fasteners such as suction cups or magnets.  Id.  Specifically, "loops" created by doubling over material to make an opening are attached to the awning covering.  Id.  The loop is then connected to a rod by slipping the hook end of the rod through the opening of the loop.  Id. at 24-25.  The other end of the rod contains a fastener, such as a suction cup, which is then used to attach the collapsible awning to some other structure.  Id. at 25.

The Court finds that there is a disputed issue of fact as to whether Figure 1 of the '380 patent discloses a frame retaining sleeve as required by claim 4 of the '904 patent. While the '380 patent discloses a flexible frame that is covered by a flexible fabric, it is not clear how, or even if, the flexible frame is wholly enclosed within the fabric material. Additionally, the Court finds that defendants have not met their burden of showing that "loop 22a," disclosed in the prior art '380 patent, anticipates claim 6 of the '904 patent. Notwithstanding defendants' assertion that "a sleeve is nothing more than a long loop," the Court finds that "loop 22a" is not a structure used to cover another structure.  Defs.' MSJ of Invalidity at 10.  Accordingly, "loop 22a" is not a sleeve, but instead an opening formed by doubling over fabric into which opening the hook end of a rod is inserted. Based on the foregoing, the Court concludes that defendants have not shown, by clear and convincing proof, that Figure 1 or "loop 22a" anticipate claim 4 and 6, respectively, of plaintiff's '904 patent.

### b. OBVIOUSNESS

A patent is considered obvious if "the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). In KSR Int'l Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007), the United States Supreme Court explained that "the principal reason for declining to allow patents for what is obvious" is that a "patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men." Id. at 1739 (quoting Great Atlantic & Pac. Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152 (1950)).

To determine obviousness, a court must examine the factors set forth in Graham v. John Deere Co., 383 U.S. 1 (1966): (1) the scope and the content of the prior art; (2) the differences between the claims at issue and the prior art; (3) the level of ordinary skill in the art; and (4) the objective evidence of nonobviousness. Iron Grip Barbell Co., Inc. v. USA Sports, Inc., 392 F.3d 1317, 1320 (Fed. Cir. 2004) (citing Graham, 383 U.S. at 17-18); KSR Int'l Co., at 127 S.Ct. at 1734. "While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls. If a court . . . conducts this analysis and concludes the claimed subject matter was obvious, the claim is invalid under § 103." KSR Int'l Co., 127 S. Ct. at 1734. Additionally, the Federal Circuit has also required a party seeking to invalidate a patent for obviousness to establish "some teaching, suggestion, or motivation to combine the [prior art] references" (the "TSM test"). In re Rouffet, 149 F.3d 1350, 1355 (Fed. Cir. 1998).

In KSR, the Supreme Court criticized the Federal Circuit's rigid application of the TSM test. The Court noted that while the TSM test "captured a helpful insight," "[t]he obviousness analysis cannot be confined by a formalistic conception of the words, teaching, suggestion, and motivation." KSR Int'l Co., 127 S. Ct. at 1741. The Court cautioned courts to avoid a "rigid approach" in determining whether an invention would have been obvious to a person skilled in the art. Id. The Supreme Court explained that "the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would." Id. Courts should therefore value "common sense" over "[r]igid preventative rules" in addressing the question of obviousness. Id. at 1742-43. Still, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." Id. "A reason for the combination is still an important consideration, even though it need not be a rigid formula. Lucent Techs., Inc. v. Gateway, Inc., 509 F. Supp. 2d 912, 933 (S.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|----------|----------------------|------|----------------|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Cal. 2007).

When determining obviousness, "neither the particular motivation nor the avowed purpose of the patentee controls." KSR Int'l Co., 127 S.Ct. at 1741-42. Instead, courts should determine whether the "objective reach of the claim" encompasses obvious subject matter. Id. at 1742. This may include "noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." Id. "[T]he results of ordinary innovation are not the subject of exclusive rights under the patent laws." Id. at 1746. However, courts must avoid "falling prey to hindsight bias," "ex post reasoning," and "[r]igid preventative rules that deny factfinders recourse to common sense." Id. at 1742-43. Furthermore, "when the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." Id. at 1740.

Defendants assert that prior art references render claim 4 and 6 of the '904 patent obvious. Specifically, defendants assert that the prior art discloses "'a panel having a continuous frame member . . . and a material covering portions' thereof, wherein the panel is collapsible 'by twisting and folding to form a plurality of concentric rings' and comprising 'a pole coupled to the panel.'" Defs.' MSJ of Invalidity at 17 ((footnotes omitted) (citing Patel Decl., Ex. H (U.S. Patent No. 4,709,928); Ex. I (U.S. Patent No. 4,815,784); Ex. J (U.S. Patent No. 5,024,262; Ex. B ('380 Patent)).

According to defendants, there are no differences between this prior art and the claims at issue here.

Defendants further assert that there is no "dispute as to the level of ordinary skill in the art." Defs.' MSJ of Invalidity at 17. According to defendants, because "little technical explanation" is needed, "[c]ommon sense, if nothing else, would have allowed at least a child, much less an adult, . . . to make such an association." Id.

Finally, defendants argue that claims 4 and 6 are obvious in light of the prior art, and that none of the claims produce a "surprising result." Id. at 20.

Plaintiff responds that there is a factual dispute as to the differences between the prior art and the claimed subject matter. First, plaintiff asserts that the '256 patent and the '372 patent lack a continuous frame member as required by the '904 patent. Second,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

plaintiff asserts that the '725 patent cannot be transformed into the structure disclosed by '904 patent.

Plaintiff further argues that a person of ordinary skill in the art is "a person of ordinary skill in the field of lightweight foldable, collapsible objects " with "a 'general engineering background or experience working with flexible polymers or metallic stays, rods, or coiled spring.'" Pl.'s Opp'n to Defs.' MSJ of Invalidity at 16 (quoting Expert Declaration of Edward Elson at 24). According to plaintiff, a person of ordinary skill in the art would also "have knowledge or experience with lightweight fabrics or other materials and with method of joining lightweight fabrics by conventional techniques." Id.

According to plaintiff, defendants' motion for summary judgment should be denied because defendants fail to explain why the prior art renders claims 4 and 6 are obvious. See Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1373 (Fed. Cir. 2008) ("[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.") (quoting In re Kahn, 441 F.3d 977, 988 (Fed. Cir. 2006)). Additionally, plaintiff contends that defendants fail to discuss any secondary considerations of obviousness. Finally, plaintiff argues that whether the claims produce a "surprising result" is irrelevant to the instant analysis.

Based on the foregoing, the Court finds that there are material questions of disputed fact as to, at a minimum, (a) the level of ordinary skill in the field and (b) the differences between the prior art references and the claims at issue with respect to the '904 patent.

## C.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '904 PATENT

Plaintiff moves for summary judgment of infringement, arguing that the accused products infringe claims 4 and 6 of the '904 patent. Because claims 4 and 6 are dependent claims to be entitled to summary judgment plaintiff must prove that the accused products also infringe the claims upon which claims 4 and 6 are dependent.

### 1.   CLAIM CONSTRUCTION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Claim 4 is dependent on claim 1.  Claim 1 recites:

An object, comprising:

> a panel having a continuous frame member that has a folded
> and an unfolded orientation, and a material covering portions of
> the frame member when the frame member is in the unfolded
> orientation, wherein the frame member is collapsible to the
> folded orientation by twisting and folding to form a plurality of
> concentric rings to substantially reduce the size of the frame
> member in the unfolded orientation; and

> a pole coupled to the panel to support the panel.

Minassian Decl., Ex. 2 ('904 patent) at 000036.

The parties do not appear to dispute that claim 1 requires an uninterrupted frame member that is capable of being twisted and folded down to form a number of rings in order to reduce the size of the structure.  The parties also appear to agree that claim 1 requires that a fabric material extends across and cover portions of the uninterrupted frame member.  However, the parties disagree on the construction on the phrases "concentric rings," and "a pole coupled to the panel to support the panel."  Id.

"Concentric" is commonly understood to mean an object with a common center, such as a circle.  The American Heritage Dictionary and Webster's Collegiate define "concentric" as "having a common center."  The American Heritage Dictionary (4th ed. 2000); Webster's Collegiate (10th ed. 1996).  The term "ring" is defined as a "circular line, figure, or object," or a "circular object, form, or arrangement with a vacant circular center."  Id.  Consistent with these commonly understood meanings, figures 5A-5D of the ' 904 patent show an object that has been twisted and folded into itself so as to form a circular shape.  See Minassian Decl., Ex. 2 ('904 patent) at 000027.

The word "coupled" when used as a verb is defined as "[t]o link together; connect."  The American Heritage Dictionary (4th ed. 2000).  Similarly, Webster's Collegiate defines the verb "coupled" as "to connect for consideration together," to fasten together."  Webster's Collegiate (10th ed. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

The Court initially construed the phrase "*a* pole" to call a single pole. Minassian Decl., Ex. 2 ('904 patent) at 000036 (emphasis added). However, after considering the arguments set forth in the parties' supplemental briefs, the Court finds that "a pole" in fact indicates "one or more." See KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000). As argued by plaintiff, "[the Federal Circuit] has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open ended claims containing the transitional phrase 'comprising.'" Id. The Federal Circuit has explained that

> "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are extremely limited: a patentee must "evince[] a clear intent" to limit "a" or "an" to "one." The subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. An exception to the general rule that "a" or "an" means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule.

Baldwin Graphic Sys. v. Siebert, Inc., 512 F.3d 1338, 1342-1343 (Fed. Cir. 2008). The instant record does not demonstrate an intent to depart from the aforementioned general rule. Therefore, the Court concludes that claim 1 requires that one or more poles be coupled to the panel to support the panel.

"Support" means "[t]o bear the weight of, especially from below," "to hold in position so as to keep from falling, sinking or slipping," "to hold up or serve as a foundation or prop for." American Heritage Dictionary (4th ed. 2000); Webster's Collegiate (10th ed. 1996). The summary section of the patent explains "[i]t is another object of the present invention to provide collapsible structures or objects that can be supported by a pole." Minassian Decl., Ex. 2 ('904 patent) at 000033. In every drawing, the pole fully supports an object in the air. See id. at 000022-26, 000028-32. Defendants argue that therefore claim 1 requires the pole to fully suspend the panel in the air. However, defendants' construction would require the Court to impermissibly read limitations from the embodiments into the claim. Instead, claim 1 can be read more broadly, to require only that a pole hold up a panel, off the ground, to keep it from falling down.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-7311 CAS (CWx) | Date | July 16, 2008 |
|----------|----------------------|------|---------------|
| Title | Patent Category Corp. v. Target Corp. and Franklin Sports, Inc. | | |

Claim 4 recites as follows:

> The object of claim 1, further including a frame retaining sleeve for retaining the frame member, the frame retaining sleeve attached to the material.

Id.

The Court has already construed claim 4 supra, and found that a "frame retaining sleeve" is a cover constructed out of fabric material that encloses a frame, and that a "frame" is a structure that offers support or structure. See Minassian Decl., Ex. 1 ('904 patent) at 000034 (describing how to create frame retaining sleeve with fabric material).

## 2.  COMPARING THE CLAIMS TO THE ACCUSED PRODUCTS

As stated above, the Court has construed claim 1 to call for a continuous frame member; the parties agree with this construction. However, at a minimum, there is a disputed question of fact as to whether the accused products are formed by a continuous frame member as plaintiff argues, or whether they are constructed using a discontinuous frame structure as defendants argue. Therefore, summary judgment of infringement as to the '904 patent is inappropriate.

## V.  CONCLUSION

The Court DENIES judgment as to plaintiff's motion for summary judgment of infringement of the '537 patent and the '904 patent. The Court DENIES defendants' motion for summary judgment of non-infringement of the '537 patent. Finally, the Court DENIES defendants' motion for summary judgment of invalidity of the '904 patent.

IT IS SO ORDERED.

00:00

Initials of Preparer          CMJ